IN THE UNITED STATED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JENNIFER BURBELLA,                 : CIVIL ACTION - LAW
         Plaintiff                     : JURY TRIAL DEMANDED
                                :
vs.                                  : ELECTRONICALLY FILED
                                  :
                                  :
MISERICORDIA UNIVERSITY;           :
Thomas J.  Botzman, Ph.D., President;      :
Cynthia Mailloux, Ph.D., R.N., CNE,       :
Chairperson Nursing Department;         :
Christina Tomkins, Professor Nursing Department;   :
Individually and in their official capacities,    :
         Defendants                      :

## COMPLAINT

AND NOW, comes Plaintiff, Jennifer Burbella, by and through her undersigned counsel, Harry P. McGrath, and hereby files this Complaint against the above named Defendants, and in support of the same avers as follows:

### I. PROCEDURAL HISTORY

1.  This Court has procedural jurisdiction and subject matter jurisdiction pursuant to 28 U.S.C. § 1331 ("federal question").

2.  Additionally, the Court can exercise supplemental jurisdiction over Plaintiff's State Law Tort Claims pursuant to 28 U.S.C. §1367.

1

## II. PARTIES

3.  Plaintiff, Jennifer Burbella, an adult and competent individual, at all relevant times was a student, properly enrolled at Defendant, Misericordia University, 301 Lake Street, Dallas, Luzerne County, Pennsylvania 18612, in its Nursing Program.

4.  Plaintiff, Jennifer Burbella, was a resident of 1110 Poplar Valley Road E, Stroudsburg, Monroe County, Pennsylvania 18360.

5. Defendant, Misericordia University, is a private institution duly organized, established and existing under the laws of the Commonwealth of Pennsylvania, and maintains its administrative offices at  301 Lake Street, Dallas, Luzerne County, Pennsylvania 18612.

6. Defendant, Thomas J.  Botzman, Ph.D., ("Botzman") is an adult and competent individual who at all relevant and material times to the events set forth in this Complaint, was the duly elected and commissioned President of Misericordia University with his office at 301 Lake Street, Dallas, Luzerne County, Pennsylvania 18612.  In that capacity, Botzman is a policymaker and is responsible for the execution of said policies for Misericordia University and at all times material and relevant hereto, was authorized by Misericordia University to perform the duties and responsibilities of the President of Misericordia University, and, in fact, acted within the scope of said duties and in that capacity, knew or should have known of the Plaintiff's rights and the Defendant University's duties and obligations to Plaintiff regarding Section 504 of the Americans With Disabilities Act of 1973.

7. Defendant, Cynthia Mailloux, Ph.D., R.N., CNE, Chairperson Nursing Department ("Mailloux") is an adult and competent individual who at all relevant and material times to

2

the events set forth in this Complaint, was the duly elected and commissioned Chairperson of the Nursing Department of Misericordia University with her office at 301 Lake Street, Dallas, Luzerne County, Pennsylvania 18612.  In that capacity, Mailloux is a policymaker for Misericordia University and at all times material and relevant hereto, was authorized by Misericordia University to perform the duties and responsibilities of the Chairperson of the Nursing Department of Misericordia University, and, in fact, acted within the scope of said duties and in that capacity, knew or should have known of the Plaintiff's rights and the Defendant University's duties and obligations to Plaintiff regarding Section 504 of the Americans With Disabilities Act of 1973.

8. Defendant, Christina Tomkins, Professor Nursing Department, is an adult and competent individual who at all relevant and material times to the events set forth in this Complaint, was the duly elected and commissioned Professor of the Nursing Department of Misericordia University with her office at 301 Lake Street, Dallas, Luzerne County, Pennsylvania 18612.  In that capacity, Tomkins is a policymaker for Misericordia University and at all times material and relevant hereto, was authorized by Misericordia University to perform the duties and responsibilities of the Professor of the Nursing Department of Misericordia University, and, in fact, acted within the scope of said duties and in that capacity, knew or should have known of the Plaintiff's rights and the Defendant University's duties and obligations to Plaintiff regarding Section 504 of the Americans With Disabilities Act of 1973.

### III.  FACTUAL BACKGROUND

9. Plaintiff made application for enrollment in and was accepted into Misericordia University's Nursing Program by April of 2010.

3

10.  Defendant, Misericordia University, although a "private" institution, receives both state and federal funds, be it directly or through student loan programs.

11. In or about August, 2010, Plaintiff enrolled in the Defendant, Misericordia University's Nursing Program with the intent of earning a Bachelor of Science Degree in Nursing.

12. Plaintiff, throughout her tenure at Defendant University, experienced great anxiety as a result of her many challenges, both socially and academically, as well as medical issues with her family and prior to enrollment had an existing predisposition which caused her to suffer from anxiety and depression.

13. By March of 2011, Plaintiff began participating in Defendant Misericordia University's Counseling and Psychological Service Center (hereinafter "CAPS").

14. Plaintiff was seen at CAPS for anxiety and depression as well as poor concentration.

15.  These sessions were provided by the University under the supervision of Cindy March, Psy.D., a school psychologist as well as Kristen Ricardo, both employees of Misericordia University.

16. When Plaintiff met with Cindy March, Psy.D. and Kristen Ricardo, Assistant Director-Student Success Center/Office for Students With Disabilities, she discussed with Ricardo her difficulties at school which included anxiety, depression and poor concentration.

17. Likewise, Plaintiff met on numerous occasions with another counselor, Courtney Burgess-Michak, and discussed with her all of the same problems Plaintiff had described to Kristen Ricardo as set forth in the preceding paragraphs.

18. Plaintiff struggled throughout her studies at Misericordia University, but always continued to seek a Bachelor's Degree in Nursing and appeared to be moving toward that goal albeit with some average but, primarily below average grades.

19. On November 22, 2013, Plaintiff signed a Release for Information at the request of Cindy March, Psy.D, her counselor employed by Defendant, Misericordia University, for the purposes of receiving "academic accommodations."   The Release would allow March to review Plaintiff's academic record.  Plaintiff signed the Authorization Agreement.  (See Exhibit A attached hereto and incorporated herein by reference).

20. In the spring semester of 2014, Plaintiff was required, as the curriculum for nursing mandated, to take and successfully complete a course entitled Functional Health Patterns of Adults IV, known better as simply NSG404.

21. NSG404 is part of the nursing school's core curriculum and therefore requires a score of at least C (78%) to pass.

22. During the spring semester of 2014, Plaintiff, Jennifer Burbella, received no accommodations despite the University reviewing Plaintiff's records in November of 2013 specifically due to her needs.

23. As a result, the Plaintiff failed NSG404 in the spring semester of 2014.

24. Plaintiff was advised of her failure on or about May 8, 2014, and on that same date she was also advised that she could repeat the class, however she had to make the decision to do so no later than May 12, 2014 - four (4) days later.

25. During this period, May 8-12, 2014, Plaintiff was advised that she had to make an immediate decision in regard to her future, i.e., repeat the NSG404 class beginning in four (4) days or change her major and receive a Bachelor's of Science Degree in Professional Studies.

26.  The University's decision as to whether to allow Plaintiff to repeat the course in four (4) days is in conflict with its Nursing Handbook Academic Advisement at Section B which states, in pertinent part, as follows:

> Achievement of a grade of at least a "C" is required in all nursing courses (NSG) courses.  Students may repeat only one nursing course (NSG), a maximum of six (6) credits.  The repeated NSG course must be completed in the <u>following academic year</u>. (emphasis added).

27. In an attempt to fulfill her passion to become a nurse, Plaintiff decided to capitulate to the demands of Misericordia University and the other named Defendants herein and agreed to enter into a summer program, however, did so with great trepidation and with the knowledge that she had difficulty, in fact, had just failed the same course in the traditional program.

28. During the summer semester 2014, Plaintiff continued to participate at CAPS with Dr. March, which resulted, on or about July 29, 2014, in Dr. March ". . . recommending certain temporary testing accommodations such as extended time and a distraction free environment. . . " be provided to the Plaintiff. (*See Exhibit B attached hereto and incorporated herein by reference*).

29. During the course of the summer program, the Plaintiff felt uncertain about her ability to successfully complete the program and continued to see Dr. March, to that end.

30. Professor Christina Tomkins was Plaintiff's instructor for the summer program which began on May 19, 2014.

31. Review of Plaintiff's academic record at Misericordia reveals that despite the Defendant Misericordia University's knowledge of Plaintiff's disabilities, which were evident even prior to the spring 2014 semester, and for which she signed an Authorization for her

counselor, Dr. March to review all of her records in November of 2013, she was not offered accommodations until after she had failed the course in the spring semester and had already received two (2) failing grades in her second attempt at the course which began on May 19, 2014.

32. Prior to the final exam for the session which began on May 19, 2014, Plaintiff had been receiving the following reasonable accommodations:

(1) extended time to complete examination; and,

(2) access to an alternative test center. (the "distraction free environment")

33. Prior to the final examination in the May 2014 session, Plaintiff's professor, Christina Tomkins, also offered an additional accommodation - the ability to ask questions of the course the professor (Tomkins) during the examination.

34. As a result of Tomkins offering additional services, Plaintiff made a reasonable request, consistent with her disability and the services Tomkins offered, that she be allowed to take the exam in the same building where it was being offered to non-disabled students, Passan Hall, instead of having to take the test in a completely different building, the Student Success Center, which is quite a distance from the location in which the non-disabled students were taking the exam, Passan. The Student Success Center was provided as the "distraction free environment."

35. This request was consistent with and prompted by Professor Tomkins having previously advised Plaintiff that Tomkins was going to give her further accommodations by allowing Plaintiff to ask questions of Tomkins during the exam.

36. Unfortunately, Professor Tomkins' promise of an additional accommodation, to allow Plaintiff and another disabled student with similar disabilities to ask questions of her during the exam never came to fruition, as to the Plaintiff.

37.  Plaintiff's classmate with disabilities very similar to Plaintiff requested to be in the same building as Tomkins, Passan Hall, and was granted that accommodation.

38.  Plaintiff requested to be allowed to take her exam in Passan Hall where Tomkins was administering the exam, and not the Student Success Center, so as to ensure she could actually speak with Tomkins during the exam. Plaintiff was denied this request.

39. Plaintiff's concern, which proved valid, was that once the testing began, Ms. Tomkins would not have time to answer her cell phone to address the needs of Plaintiff.

40.  Plaintiff was also concerned about the possibility of their phones not working because they might be out of range or service, or for some other reason which is oftentimes the case with cellular devices.

41. As stated above, another similarly disabled peer in her class was allowed to take the exam in the same building as that student's non-disabled peers.  Plaintiff, however, was required to take the exam in the Student Success Center and as such was denied this simple, reasonable accommodation.

42.  To Plaintiff's knowledge, Defendant Tomkins, alone, made the decision to refuse Plaintiff's reasonable request for an accommodation; to take the exam in the same

building as her non-disabled peers so as to insure Plaintiff's access to Defendant Professor Tomkins.

43.  Further, it is believed and therefore averred that Professor Tomkins did so without utilizing the University's process for such requests, if any such process exists.[1]

44. Tellingly, another disabled student who also received accommodations similar to those provided to Plaintiff and in particular taking tests at the Student Success Center, was granted the reasonable accommodation of taking her exam in another room separate from the non-disabled peers yet in the same building as her non-disabled peers, Passan Hall.

45. Professor Tomkins' decision to deny Plaintiff clearly indicates one of two things:

(i) Plaintiff was treated differently than a similarly disabled peer; or

(ii) that there was no process or procedure for making such determinations otherwise Plaintiff would have been afforded the same support services as her similarly disabled classmate.

46. As a result of the Plaintiff being denied the opportunity to take the test in Passan Hall, she was also denied the opportunity to ask the professor questions during the examination.

47. Just prior to the final exam, Plaintiff contacted Defendant Tomkins by means of a "hard line" telephone in Defendant Tomkins' office.

48. The purpose of that call was to insure that Tomkins would be available by phone (either by cell or "hardline") to speak with Plaintiff once the exam began.

9

---

[1]The lack of the University's process or procedure for determining whether a student's request for accommodation is reasonable also comes into question when one considers that Dr. March requested Plaintiff's Authorization to review records in November of 2013 and no accommodation was forthcoming until July of 2014.

49. This is the one and only communication Plaintiff had with Defendant Tomkins until the time allotted for the exam expired.

50. Plaintiff knew that eventually Professor Tomkins would begin proctoring the exam in a Passan Hall classroom and would no longer be in her office and as such would have no access to her "hard line."

51. When Plaintiff requested that Professor Tomkins allow her to test in Passan Hall, she also relayed her rationale or concerns to Defendant Tomkins who responded by simply stating: ". . . call her on her cell phone."

52. The unfortunate reality of the situation on the day of the exam was that Professor Tomkins did not answer her cell phone despite Plaintiff's repeated attempts to contact her throughout the final examination.

53. In fact, she never spoke to Professor Tomkins after the initial contact described above on the "hard line".

54. Professor Tomkins' failure to be available to Plaintiff on numerous occasions during the examination created an even more stressful environment for the student, all of which can be verified by Megan Hurley, a counselor at Misericordia University, who witnessed the Plaintiff attempting to make calls to Professor Tomkins on several occasions during the exam and breaking down and crying when Tomkins did not answer.

55. Professor Tomkins denied both accommodations on the date of Plaintiff's final exam:

> (i) that Plaintiff be allowed to take the exam in the same building as her non-disabled peers to eliminate any communication problems during the exam; and,
>
> (ii) that Defendant Tomkins would be available to assist the Plaintiff during the exam either by phone or in person to answer any questions Plaintiff had and otherwise assist Plaintiff during the exam.

56. Defendant Tomkins, to date, has failed to formally notify Plaintiff why her request for a reasonable accommodation was denied.

57. The University and its co-defendants, Plaintiff believes and therefore avers, did not at the time of this incident, have any formal process where students with disabilities request for reasonable accommodations could be fairly and unbiasedly considered.

58. With Professor Tomkins unavailable to the Plaintiff, the Plaintiff, Jennifer Burbella, broke down and wept more than once during the final exam.

59. Ultimately, and unfortunately, Plaintiff was advised by the Defendant University that she had, once again, not scored well enough in NSG404 to be allowed to graduate with a nursing degree.

## COUNT I

## SUBSTANTIATIVE AND PROCEDURAL VIOLATION OF SECTION 504 OF THE

## FEDERAL REHABILITATION ACT

### Plaintiff v. Misericordia University

60.  The preceding paragraphs are incorporated herein by reference as if fully set forth herein at length.

61. Section 504 of the Rehabilitation Act, 29 U.S.C.A. Section 794, states in pertinent part:

> "[n]o otherwise qualified individual with a disability in the
> United States, as defined in §705(20) of this title shall, solely by
> reason of her or his disability, be excluded from the participation
> in, be denied the benefits of, or be subjected to discrimination
> under any program or activity receiving federal financial
> assistance or under any program or  activity conducted by an
> executive agency or by the United States Postal Service…"

62.  On August 4th, Defendant, Professor Tomkins offered Plaintiff, verbally, an additional accommodation which allowed Plaintiff to ask questions and assistance of Tomkins during the course of examinations.

63.  Plaintiff accepted Defendant Professor's offer for the additional accommodation, the ability to ask questions and seek assistance during the exam.

64. To ensure that communications could take place between Defendant, Professor Tomkins and Plaintiff, Jennifer Burbella, made a request for reasonable accommodation to Defendant, Professor Tomkins, asking that she be allowed to remain in the same building as her non-disabled peers during the exam period to ensure that she was in proximity to Defendant, Professor Tomkins and that she would have access to her, person to person.

65. Without explanation, Defendant, Professor Tomkins refused Plaintiff's request for the reasonable accommodation of being allowed to be in the same building with Professor Tomkins for the purpose of having person to person contact and in that way avoid having a possible breakdown in communication due to failure of their communication devices or otherwise.

66. Plaintiff believes and therefore avers that a similarly situated disabled student was granted that reasonable accommodation, person to person contact, under the identical circumstances that were denied Plaintiff.

67. Plaintiff believes and therefore avers that the decision to deny her the reasonable accommodation requested was made unilaterally by Defendant, Professor Tomkins and

without utilizing Defendant University's system to review such requests to ensure that Plaintiff's rights were safeguarded as required under Section 504 at 34 C.F.R. Section 104.7.[2]

68. Further, as a result of Defendant, Professor Tomkins denying Plaintiff the reasonable accommodation of the ability to take the test in the same area as her non-disabled peers, the Plaintiff was denied two accommodations:

> (i) the ability to take the exam in the same building as her peers, disabled and non-disabled alike, and as such did not have the person to person contact requested; and,

> (ii) access (telephonic or otherwise) to Defendant Tomkins and as such was denied the ability to speak with the professor during the exam.

69. The accommodations denied the Plaintiff, the location in which to take the exam, as well as her inability to confer with the Defendant, Professor Tomkins, resulted in her denial of the benefit of those two accommodations when a fellow disabled student with similar disabilities was provided the same accommodations as Plaintiff requested on essentially the same terms and conditions.

70. The procedural violations, no process, appeal or grievance, resulted in substantive deprivations including, but not limited to, the actual services offered being withheld.

71. Alternatively, Plaintiff's claim of a 504 violation stands alone and without regard to treatment received by a similarly disabled peer as referenced in paragraph 67 above in that she was excluded from participation in, denied the benefits of, and subject to discrimination by the University.

---

[2]The content of Footnote 1 is referenced here to emphasize the Defendant University's failure to address Plaintiff's needs. The lack of the University's process or procedure for determining whether a student's request for accommodation is reasonable also comes into question when one considers that Dr. March requested Plaintiff's Authorization to review records in November of 2013 and no accommodations were forthcoming until July of 2014.

72. Section 504 of the Rehabilitation Act of 1973 at paragraph 104.7, entitled "Designation of Responsible Employees and Adoption of Grievance Procedures" reads as follows:

    (a)    Designation of responsible employee.  A recipient that employs fifteen or more persons shall designate at least one person to coordinate its efforts to comply with this part.

    (b)    Adoption of grievance procedures.  A recipient that employs fifteen or more persons shall adopt grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints alleging any action prohibited by this part.  Such procedures need not be established with respect to complaints from applicants for employment or from applicants for admission to post secondary educational institutions.

73. Plaintiff believes and therefore avers that Defendant University has denied Plaintiff her procedural rights pursuant to Section 504 by:

    (i) not having the proper mechanism or procedure (including but not limited to the lack of a "responsible employee") in place for disabled students who seek accommodations to have their requests appropriately considered;

    (ii) allowing their employees to make the determination of whether an accommodation is reasonable on their own, without review, due to the lack of a procedure approved by the Defendant University;

    (iii) having no appeal or grievance procedure available to students who seek and are refused accommodations.

74.  To establish a violation of Section 504, a plaintiff must show that "(1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded

from participation in, denied the benefits of, or subject to discrimination at, the school." *Andrew M. v. Delaware Cnty. Office of Mental Health & Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007) (quoting Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 253 (3d Cir. 1998)*, superseded by statute on other grounds as recognized by *D.F. v. Collingswood Borough Bd. of Educ., 694 F.3d 488 (3d Cir. 2012))*.   In addition, "[t]he state must have failed to provide the service for the sole reason that the child is disabled." *Andrew M., 490 F.3d at 350.*

75.  Applying the facts of the instant matter, all of the elements set forth in the preceding paragraph can be satisfied:

> (i) Defendant knew Plaintiff was disabled. As set forth in paragraph 28 of the Complaint, Dr. March had reviewed Plaintiff's complete medical and educational file and as a result recommended accommodations to be extended to the Plaintiff consistent with her disabilities, anxiety, depression and poor concentration;
>
> > (a) Extend time on exams; and
> >
> > (b) Distraction-free environment.
>
> (ii) Plaintiff was otherwise qualified to participate in school activities by virtue of her admission to the nursing program;
>
> (iii) The Defendant University receives federal aid both directly and through student loan programs; and,
>
> (v) Plaintiff was excluded from participation in and denied benefits of or subject to discrimination by the University when:
>
> > (a) Dr. Tomkins offered the accommodation to Plaintiff which allowed her to discuss the test with Tomkins during the exam, however, that accommodation was not provided; and,
> >
> > (b) Plaintiff made a reasonable request for an accommodation of taking the test in the same building as her disabled and non-disabled peers and the same was unilaterally denied by Dr. Tomkins; and,

(c) the University did not have the proper mechanism or procedures (including but not limited to the "lack of responsible employees") in place for disabled students who seek accommodations to have their requests appropriately considered; and,

(d) the University allowed its employees to make the determination of whether an accommodation is reasonable on their own, without review, due to a lack of procedure approved by the Defendant University; and

(e) having no appeal or grievance procedures available to students who seek and are refused accommodations; and,

(f) Plaintiff's similarly disabled student peer was granted the identical accommodations Plaintiff was denied.

76. Additionally, "[A] plaintiff need not establish that there has been an intent to discriminate in order to prevail under §504." *Nathanson v. Med. Coll. of Pennsylvania, 926 F.2d 1368, 1384 (3d Cir. 1991).*

77. As a result of the above-described procedural and substantive violations, Plaintiff has suffered damages as described more particularly herein.

WHEREFORE, Plaintiff demands an entry of judgment against the Defendants, with an award of compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interest plus punitive damages and other such relief as this Court deems necessary. Accordingly, Plaintiff demands entry of judgment on her behalf and against the

16

Defendants and each of the three (3) counts of the Complaint, punitive damages, reasonable attorney's fees and other such relief as is provided by law and this Honorable Court deems appropriate.

**COUNT II**

**DAMAGES**

**Plaintiff v. Misericordia University, Thomas J.  Botzman, Ph.D., President, Cynthia**

**Mailloux, Ph.D., R.N., CNE, Chairperson Nursing Department, Christina Tomkins,**

**Professor Nursing Department; Individually and in their Official Capacities**

78. The preceding paragraphs are incorporated herein by reference as it fully set forth at length.

79.  As a result of the Defendants' violation of her rights under Section 504, the Plaintiff has suffered as follows:

> (a) humiliation and embarrassment as a result of not graduating with her peers with a degree in nursing;
>
> (b) the humiliation and embarrassment attendant her breaking down in public during the final exam in the Student Success Center;
>
> (c) the costs which accompany having to "start all over again" at another university to continue on her quest for a bachelor's degree in nursing; and,
>
> (d) the costs which accompany having her career path on delay due to her having to take essentially the same courses over, a third time.

WHEREFORE, Plaintiff demands an entry of judgment against the Defendants, with an award of compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00)

exclusive of costs and interest plus punitive damages and other such relief as this Court deems necessary. Accordingly, Plaintiff demands entry of judgment on her behalf and against the Defendants and each of the three (3) counts of the Complaint, punitive damages, reasonable attorney's fees and other such relief as is provided by law and this Honorable Court deems appropriate.

## COUNT III

### REQUEST FOR PUNITIVE DAMAGES

**Plaintiff v. Misericordia University, Thomas J. Botzman, Ph.D., President, Cynthia Mailloux, Ph.D., R.N., CNE, Chairperson Nursing Department, Christina Tomkins, Professor Nursing Department; Individually and in their Official Capacities**

80. The preceding paragraphs are incorporated herein by reference as it fully set forth at length.

81. The aforementioned conduct of the Defendants was outrageous and/or done willfully, wantonly or with reckless indifference to the rights of the Plaintiff.

82. The Defendants knew or should have known that their conduct was in direct violation of federal statutes, and in so doing, conducted themselves knowingly, created a risk of unnecessary harm to the Plaintiff.

83. The Defendants' failure to provide the reasonable and necessary accommodations to the Plaintiff denied her the right to a free and appropriate education.

84. Defendants' reckless, outrageous, wanton, willful and malicious behavior includes

but is not limited to:

    (a)    failing to provide Plaintiff with a reasonable accommodation when Defendants knew or should have known of her fragile mental condition;

    (b)    failure of the Defendant University to provide the reasonable and appropriate accommodations resulting in Plaintiff being excluded from her chosen profession, nursing;

    (c)    failure to provide student with procedural safeguards mandated by statute;

    (d)    failure to provide reasonable accommodations to Plaintiff when the same accommodations were made available to another disabled student with similar disabilities.

85. These acts and other acts, the Defendant University and its staff knew or should have known, would result in psychological injury to Plaintiff.

86. As a direct and proximate result of the reckless, outrageous, wanton, willful and malicious conduct of the Defendants, Plaintiff has endured, and will continue to endure, psychological and emotional suffering.

WHEREFORE, Plaintiff demands an entry of judgment against the Defendants, with an award of compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interest plus punitive damages and other such relief as this Court deems necessary. Accordingly, Plaintiff demands entry of judgment on her behalf and against the

Defendants and each of the three (3) counts of the Complaint, punitive damages, reasonable attorney's fees and other such relief as is provided by law and this Honorable Court deems appropriate.

Respectfully submitted:

O'Malley, Harris, Durkin & Perry, P.C.

BY __/s/ Harry P. McGrath_____
        Harry P. McGrath, Esquire
        I.D. No. 67025
        345 Wyoming Ave.
        Scranton, Pa 18503
        Phone: 570-348-3711
        hmcgrath@omalleyandharris.com

20

## VERIFICATION

I, **Jennifer Burbella**, hereby state that the facts and averments contained in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements made herein are made subject to the penalty of 18 Pa.C.S. §4904 regarding unsworn falsification to authorities.

Jennifer Burbella

## RE: testing accomodations

**Cynthia March rsm**
**Sent:** Tuesday, July 29, 2014 4:01 PM
**To:**  Jennifer Burbella

Ok, I will send it now!
Thanks for getting back to me.

Dr. Cindy March, Psy.D.
Licensed Psychologist
Director, Counseling & Psychological Services Center
Misericordia University
Dallas, PA  18612
570-674-6366

SINCE EMAIL IS NOT A SECURE FORM OF COMMUNICATION, CONFIDENTIALITY OF INFORMATION
TRANSMITTED BY EMAIL CANNOT BE GUARANTEED.

**From:** Jennifer Burbella
**Sent:** Tuesday, July 29, 2014 3:50 PM
**To:** Cynthia March rsm
**Subject:** Re: testing accomodations

Dr. Cindy,
 I would love that, I think my time to take a test would really benefit me. Thank you so much for that.

Jen

Sent from my iPhone

On Jul 29, 2014, at 12:03 PM, "Cynthia March rsm" <cmarch@misericordia.edu> wrote:

    Hi Jen,

    Kristen Ricardo called me and informed me that you have been working with the SSC staff regarding
    your class. She suggested that I could write an email to her recommending certain temporary
    testing accommodations (to last through your final exam) such as extended time and a distraction-
    free environment. I am willing to write this so you can have these but need for you to give me
    permission to do so (due to confidentiality requirements on my part). Let me know if you would like
    me to proceed and send Kristen the recommendation.

    Dr. Cindy

    Dr. Cindy March, Psy.D.
    Licensed Psychologist
    Director, Counseling & Psychological Services Center
    Misericordia University
    Dallas, PA  18612
    570-674-6366

    SINCE EMAIL IS NOT A SECURE FORM OF COMMUNICATION, CONFIDENTIALITY OF
    INFORMATION  TRANSMITTED BY EMAIL CANNOT BE GUARANTEED.

EXHIBIT "A"



testing accommodation for student - Outlook Web App, light version

Document #15

Outlook Web App

## Mail

### Calendar

### Contacts

**Deleted Items** (51)
**Drafts** [1]
**Inbox** (20)
Junk E-Mail
Sent Items

## testing accommodation for student

Cynthia March rsm

**Sent:** Tuesday, July 29, 2014 4:03 PM
**To:** Kristen Ricardo
**Cc:** Jennifer Burbella

Hi Kristen,

I am writing to recommend that Jennifer Burbella be given temporary testing accommodations in the form of extended time and distraction free testing environment for her remaining nursing exams. Given her anxiety level, I feel that these accommodations will offer Jen the best possible opportunity to succeed.

Please let me know if you have any questions for me about my recommendation.

Thank you,

Cindy

Dr. Cindy March, Psy.D.
Licensed Psychologist
Director, Counseling & Psychological Services Center
Misericordia University
Dallas, PA  18612
570-674-6366

SINCE EMAIL IS NOT A SECURE FORM OF COMMUNICATION,
CONFIDENTIALITY OF INFORMATION  TRANSMITTED BY EMAIL CANNOT
BE GUARANTEED

EXHIBIT "B"